IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

JOSEPH SACRA, et al.,

    Plaintiffs,

v.                                   Civil Action No. 1:15-16265

JACKSON HEWITT, INC., et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiffs' motion to remand. (Doc. No. 12). For the reasons that follow, plaintiffs' motion to remand is **GRANTED**.

**I.   Background**

The instant dispute centers on fraudulent tax return documents filed by defendant Jeremy Evans. In February 2014, plaintiffs Joseph and Jennifer Sacra,[1] husband and wife, sought assistance preparing their 2013 tax return from defendant K.R. Enterprises, a franchise of defendant Jackson Hewitt. (Doc. No. 12 at 2). During their meeting at K.R. Enterprises, plaintiffs provided private and confidential information, including their social security numbers, income data, bank accounts, and other

---

[1] The remaining plaintiffs in this action are the Sacra's children.

1

sensitive financial information, as is typically necessary for the preparation of tax returns.  Id.  Employees of defendant K.R. Enterprises used this data to prepare plaintiffs' tax return and saved this information in their database.  Id.

Sometime before February 2015, defendant K.R. Enterprises hired defendant Jeremy Evans.  Id.  Defendant Evans has a criminal record, including convictions for crimes involving moral turpitude.  Id.  Plaintiffs allege that defendant Evans used their financial information saved in the K.R. Enterprises database to prepare and file a false tax return for 2014 under plaintiffs' names.  Id.  Plaintiffs themselves attempted to file a 2014 tax return, unaware of defendant Evans's actions, and the IRS rejected plaintiffs' filing as successive.  Id.  Plaintiffs did not receive their refund, totaling $5,588, and could not meet their financial obligations as a result.  (Doc. No. 1, Exh. A at 12).  For his part, defendant Evans faces criminal charges of identity theft, attempted felony, forgery, uttering, petit larceny, and fraudulent schemes.  Id. at 15.

On September 10, 2015, plaintiffs filed suit in the Circuit Court of McDowell County, West Virginia.  (Doc. No. 1, Exh. A).  Plaintiffs' complaint asserts a number of claims and seeks punitive damages and declaratory relief.  Id. at 13-25.  On December 22, 2015, defendants Ohio Security Insurance Company

and Liberty Mutual Insurance Company removed the case to this court, invoking diversity jurisdiction. (Doc. No. 1).

Plaintiffs filed a motion to remand the case to state court, arguing that the court does not possess diversity jurisdiction because both plaintiffs and defendant Evans are West Virginia residents and because the amount in controversy does not exceed $75,000. (Doc. No. 12). Defendants Ohio Security and Liberty Mutual oppose plaintiffs' motion, arguing that the court should realign defendant Evans, which would allow for diversity jurisdiction. (Doc. Nos. 14, 17).

## II.  Standard of Review

A defendant may remove an action from state court to federal court only if the case could have been brought originally in federal court. Yarnevic v. Brink's, Inc., 102 F.3d 753, 754 (4th Cir. 1996) (citing 28 U.S.C. § 1441). A federal court has original jurisdiction over actions where the amount in controversy exceeds $75,000, exclusive of interests and costs, and the controversy is between citizens of different states. 28 U.S.C. § 1332(a)(1). Diversity of citizenship requires complete diversity: each plaintiff must be a citizen of a different state than each defendant. Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996). The burden to prove these elements rests with the removing party, in this case, defendants. Dougherty v. Cerra et al., 987 F. Supp. 2d 721, 726

(S.D.W. Va. 2013) (citing <u>Mulcahey et al. v. Columbia Organic Chem. Co., Inc. et al.</u>, 29 F.3d 148, 151 (4th Cir. 1994)).

Federal courts are courts of limited jurisdiction and there is no presumption that a court can exercise jurisdiction. <u>Pinkley, Inc. v. City of Frederick</u>, 191 F.3d 394, 399 (4th Cir. 1999). Removal jurisdiction raises "significant federalism concerns," and, as a result, it must be strictly construed. <u>Mulcahey</u>, 29 F.3d at 151 (citing <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100 (1941)). Because of these significant concerns, the court must resolve any doubt in favor of remand. <u>Id.</u> (internal citations omitted).

### III. <u>Discussion</u>

#### A. **Diversity of Citizenship**

Plaintiffs contend that this court does not possess diversity jurisdiction over this case because defendant Evans is, like plaintiffs, a West Virginia resident, thereby destroying complete diversity of citizenship.[2] Defendants

---

[2] Under a subject matter jurisdiction analysis, plaintiffs are citizens of and domiciled in West Virginia. "For purposes of diversity jurisdiction, 'a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business.'" <u>Hoschar v. Appalachian Power Co.</u>, 739 F.3d 163, 170 (4th Cir. 2014) (quoting 28 U.S.C. § 1332(c)(1)). Consequently, defendant Jackson Hewitt is a citizen of Virginia and New Jersey, defendant K.R. Enterprises is a citizen of Virginia, defendant Ohio Security Insurance Company is a citizen of New Hampshire and Massachusetts, and defendant Liberty Mutual

Liberty Mutual and Ohio Security contend that defendant Evans is actually a citizen of Virginia.

Under 28 U.S.C. § 1332(a), federal courts possess jurisdiction over those cases where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states."  (2012). An individual is a citizen of the state in which he or she is domiciled.  Bloom v. Library Corp., 112 F. Supp. 3d 498, 502 (N.D.W. Va. 2015) (citing Johnson v. Advance Am., 549 F.3d 932, 937n.2 (4th Cir. 2008)).  While residence in a state requires mere presence, domicile is more demanding and requires physical presence coupled with an intent to make the state a home.  Id.

Courts analyze an individual's domicile on a case-by-case basis, using a totality of the circumstances approach.  Id. (citing 13E Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3612 (3d ed. 2014)).  The following factors are often present in such an analysis:  the party's current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or

---

(cont'd)
Insurance Company is a citizen of Massachusetts.  (Doc. No. 1, Exh. A at 1-2).  Only defendant Evans's citizenship is at issue.

business; driver's license and automobile registration; [and] payment of taxes." Id. None of these factors is dispositive. Id. Timing is significant, as well, and the court looks to the domicile of the parties when the case was initiated. Id. (citing Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 390 (1998)). And, as noted above, since defendants Ohio Security and Liberty Mutual removed the case to this court, invoking its diversity jurisdiction, the burden remains theirs to demonstrate the propriety of that jurisdiction.

Defendant Evans's status as a fugitive from the law complicates the court's analysis of his domicile at the time the case began. Defendant Evans has been charged in a criminal case as a result of the conduct plaintiffs allege in their complaint. (Doc. No. 18, Exh. E). On February 4, 2015, defendant Evans was arrested at a Jackson Hewitt location in Kimball, West Virginia. (Doc. No. 18, Exhs. A, B). However, he failed to appear for his arraignment and fled the jurisdiction. (Doc. No. 18 at 7). When plaintiffs filed their complaint on September 10, 2015 and when defendants removed the case on December 22, 2015, defendant Evans was still a fugitive from justice. On or about January 9, 2016, police in Washington County, Virginia arrested defendant Evans and he was extradited to McDowell County, West Virginia. (Doc. No. 18, Exhs. G, HHH).

On the basis of the documents offered by plaintiffs and the insurance company defendants, it appears that defendant Evans was domiciled in West Virginia before he fled the state.  Both parties note that defendant Evans was employed by defendant K.R. Enterprises in West Virginia at the time of his arrest.  His last known residence at this time was in Welch, West Virginia.  When plaintiffs initiated this action in state court, it appears that they attempted to serve defendant Evans at this last known address.  Furthermore, when defendants attempted to serve defendant Evans in a related action, they themselves used this same street address in Welch, West Virginia for service of process.  See Ohio Security Ins. Co. v. K R Enterprises, Inc., et al., Civil Action No. 1:15-cv-16264 (S.D.W. Va. filed Dec. 21, 2015).  As the insurance company defendants concede, even as recently as early this year, the parties, including co-defendant Jackson Hewitt, were using this same address in Welch, West Virginia to send mail to defendant Evans.  (Doc. No. 17 at 14).

The above evidence represents only two of the many factors that courts consider when determining domicile.  However, the parties have not submitted anything else that would permit the court to analyze defendant Evans's domicile.  While the insurance company defendants have produced considerable evidence regarding defendant Evans's whereabouts in the years prior to 2008, including his extensive criminal record, they have

produced virtually no documentation of his presence in the subsequent years. Defendants have offered a record of defendant Evans's Virginia driver's license, but it does not undermine the court's conclusion that defendant Evans was domiciled in West Virginia, not Virginia. This license record is undated and, further, lists defendant Evans's driver's license status as suspended.[3] (Doc. No. 18, Exh. LLL). Under the totality of the circumstances, the court concludes that defendant Evans established domicile in West Virginia before he absconded from justice.

Despite the insurance company defendants' arguments otherwise, defendant Evans's arrest in Virginia does not change his domicile. A fugitive's last domicile for purposes of subject matter jurisdiction was the state _from_ which he or she fled, not the state in which he or she was apprehended. See Lloyd v. Lefler, 694 F.2d 489, 490 (7th Cir. 1982) (Posner, J.) ("It seems absurd to hold that since a fugitive might be domiciled anywhere or maybe even nowhere, the act of becoming a fugitive puts a person beyond the jurisdiction of the federal courts. Probably the last domicile of the fugitive before he

---

[3] While the burden of demonstrating citizenship remains defendants', the court notes that plaintiffs have documented that defendant Evans possessed an unexpired West Virginia identification card, issued in 2013 and listing a West Virginia address as his residence. (Doc. No. 22, Exh. A at 1-2).

fled should be his domicile for diversity purposes. . . . This is a simple rule, and avoids rewarding the fugitive for his elusiveness."); see also Howell by Goerdt v. Tribune Entm't Co., 106 F.3d 215, 218 (7th Cir. 1997) (Posner, C.J.); Mut. Assignment & Indemn. Co. v. LindWaldock & Co., LLC, 364 F.3d 858, 861 (7th Cir. 2004) (Easterbrook, J.).  Only in those cases where a fugitive's whereabouts are known to the parties have courts used the fugitive's place of hiding as his domicile for subject matter jurisdiction purposes.  See Bower v. Egyptair Airlines Co., 731 F.3d 85, 90 (1st Cir. 2013); Popal v. Slovis, No. 12 Civ. 3916 (LGS)(FM), 2013 WL 1234875, at *3 (S.D.N.Y. Mar. 27, 2013).

In this case, no one knew where defendant Evans was after he fled West Virginia.  Defendants themselves concede this fact. (Doc. No. 17 at 14; "[U]ntil very recently, Mr. Evans' whereabouts were completely unknown . . .").  As a result, his domicile for purposes of subject matter jurisdiction is not Virginia, where he was apprehended by law enforcement, but West Virginia, the last place where he established his domicile. Because defendant Evans's domicile and citizenship belong to West Virginia, complete diversity does not exist in this case.

Therefore, the court cannot exercise subject matter jurisdiction over the controversy and must remand the case to state court.[4]

### B. Realignment of Defendant Evans[5]

The insurance company defendants argue that this court will possess subject matter jurisdiction if the court realigns defendant Evans with the plaintiffs. The insurance company defendants contend that defendant Evans is in default and, as a result, his "interests are no longer adverse to the Plaintiffs'." (Doc. No. 17 at 10). Furthermore, these defendants argue that it is in defendant Evans's interest for this court to determine that defendants Ohio Security and/or Liberty Mutual have a duty to indemnify him, potentially relieving him from financial liability. Id.

---

[4] The court notes that plaintiffs raised additional arguments in their motion to remand regarding the propriety of the court's jurisdiction; specifically, that defendants Ohio Security and Liberty Mutual did not have consent of defendant Evans to remove the case to federal court in violation of 28 U.S.C. § 1446(b)(2)(A) and that the amount in controversy does not exceed $75,000. Having determined that the parties are not completely diverse and subject matter jurisdiction is thereby lacking, the court need not reach the merits of plaintiffs' remaining arguments.

[5] The insurance company defendants have filed a motion to realign defendant Evans. (Doc. No. 14). Having determined that subject matter jurisdiction is lacking, the court does not have authority to rule on this motion. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); see also Roach v. W. Va. Reg'l Jail & Corr. Facility Auth., 74 F.3d 46, 49 (4th Cir. 1996). However, the court has considered those arguments proffered by defendants in this motion as they relate to subject matter jurisdiction.

10

In certain cases, post-removal realignment of parties is permissible to achieve complete diversity. See Lott et al. v. Scottsdale Ins. Co. et al., 811 F. Supp. 2d 1220, 1223 (E.D. Va. 2011) (citing Gen. Tech. Applications, Inc. v. Exro Ltda et al., 388 F.3d 114, 120 (4th Cir. 2004)). "In determining whether a court has jurisdiction over a certain action, the court is not bound by the alignment of the parties in the pleadings. Instead, the court has the duty to 'look beyond the pleadings and arrange the parties according to their sides in the dispute.'" Slusarek v. John Riley Co. et al., Civil Action No. 5:13CV148, 2014 WL 3824036, at *2 (N.D.W. Va. Aug. 4, 2014) (quoting Dawson v. Columbia Ave. Saving Fund, Safe Deposit, Title & Trust Co., 197 U.S. 178, 180 (1905)). To determine the proper alignment of the parties, our Court of Appeals applies the "principal purpose" test, whereby the court first "ascertain[s] the collision of interests from the principal purpose of the suit and the primary and controlling matter in dispute," then aligns the parties in accordance with their respective sides. United States Fid. & Guar. Co. v. A & S Mfg. Co., 48 F.3d 131, 133 (4th Cir. 1995) (internal citations and quotation marks omitted).

In the instant case, the principal purpose of plaintiffs' action is to determine whether defendant Evans fraudulently used their financial and security information to create and submit

11

false tax returns and any liability resulting therefrom. The secondary purpose is to determine whether defendant Evans's employers and their indemnifiers should be responsible for his actions, as well. While plaintiffs likely will recover considerably more if they succeed on their suit's secondary purpose, this success is contingent upon the court's determination that defendant Evans is culpable. A finding that the insurance company defendants are liable cannot occur absent a ruling that defendant Evans was first liable. As defendant Evans's liability is still in dispute, his interests do not align with plaintiffs'.

Although the insurance company defendants argue that the interests of plaintiffs and defendant Evans are no longer adverse because defendant Evans is in default, the court is not persuaded. The insurance company defendants specifically cite two cases in support of this proposition: Davis v. Carey, 149 F. Supp. 2d 593 (S.D. Ind. 2001) and Ferraro v. Humphrey et al., Cause No. 2:14-CV-396-TLS, 2015 WL 685886 (N.D. Ind. Feb. 18, 2015). In both of these cases, the courts realigned a tortfeasor defendant to achieve diversity jurisdiction. However, both of these cases feature one critical fact missing in this case: state courts had already entered default judgments against the tortfeasor defendants. Davis, 149 F. Supp. 2d at 595 ("Davis obtained a default judgment against

Carey in the amount of $1,419,777.12."); Ferraro, Cause No. 2:14-CV-396-TLS, 2015 WL 685886, at *1 ("On January 4, 2007, the Plaintiff obtained a default judgment against Humphrey for $372,543.41."). While defendant Evans is in default, plaintiffs do not have the benefit of a default judgment against him. As a result, these cases are not as persuasive as defendants may suppose.

In contrast to the insurance company defendants' argument, the majority of courts do not realign an alleged tortfeasor defendant in cases where his or her liability has not been established. "[C]ourts seem consistently to have determined that, where the plaintiff's case includes a substantive cause of action against a defendant, that defendant should not be realigned as a plaintiff notwithstanding the fact that both plaintiff and defendant would benefit from a finding against a second defendant." Landmark Funding, LLC v. Perrault et al., Civil Case No. L-10-1638, 2011 WL 862751, at *3 (D. Md. Mar. 10, 2011). This is precisely the situation before the court. Plaintiffs' cause of action includes a number of substantive claims against defendant Evans, claims which neither this court nor a state court have decided or entered default judgment. While defendant Evans may benefit from a finding that defendants Liberty Mutual and Ohio Security must indemnify him and/or his employers, this does not mean this court should realign him as a

plaintiff.  Accordingly, the court finds no reason to support realignment.

## IV. Conclusion

For the foregoing reasons, the court concludes that it lacks subject matter jurisdiction.  Accordingly, plaintiffs' motion to remand is **GRANTED** it is **ORDERED** that this action be **REMANDED** to the Circuit Court for McDowell County.  The remaining motions associated with this case, (Doc. Nos. 7, 14), are **DENIED** as moot.

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record and a certified copy to the Clerk of Court for the Circuit Court of McDowell County.

**IT IS SO ORDERED** this 19th day of February, 2016.

> Enter:
>
> *David A. Faber*
> David A. Faber
> Senior United States District Judge